DeBlanc, J.
J. M. Wells, Junior, the public administrator of the parish of Rapides, took charge — as executor — of the succession of Stephen Duncan Linton, since the 7th of July 1878. The only property of any value then owned by the succession and with which he has had any *131 thing to do, was a plantation appraised in 1870 at $24,000 — in 1875, at $18,000, and which — on the 17th of March 1877 — was sold at public auction for $5500. Before 1873, the succession of Linton was undet the ■administration of O. K. Hawley, the then public administrator of the parish of Rapides.
‘On the 9th of April 1877, Wells filed-^-as executor of said succession — a provisional account of his administration, and the State National Bank and Charles Fenner oppose the allowance of nine of the items therein charged against said succession, to wit:
1. Two different commissions of five per cent each, claimed by the ■executor, one computed on $18,000, the amount of the inventory of 1875, the other on $609, the amount of rents which he alleges that he has collected.
2. Four accounts of R. J. Bowman — an attorney at law, aggregating $2600, for professional services.
3. A fee of $600 acknowledged by the executor as' due to R. P. Hunter, and transferred by the latter to William Grant.
4. A claim of $300 of Race, Foster & Merrick, for services in a federal court, and
5. A charge in blank for unforeseen expenses.
The opponents are creditors of the estate for more than one hundred thousand dollars, and they complain that out of $6100, the entire amount to be distributed, the executor proposes to retain for himself and to pay to his attorneys the sum of $4430, leaving to be divived among themselves and others a balance of $1670.
This court has, long since, justly held “that the debts of a succession, like those of a ceding debtor, are of a higher dignity, and are to be paid before those of the deceased, or. of the insolvent. As to them, it is not merely a question of privilege: the services nominally rendered to the estate are, in reality, rendered to the heirs and creditors themselves.”
3 M. 364.
It is always — for a court — a delicate task to fix the disputed value ■of an attorney’s compensation. In this instance, it is as difficult as' delicate — for, the evidence shows that the professional services, for which the compensation is claimed, have inured to the benefit of the succession, and that they are worth the amount allowed by the lower court; but the evidence also shows that — if allowed in full — the fees and commissions carried in the provisional account would absorb mo'rfe than two thirds of the entire assets of the succession.
In 12th R. 414 Judge Martin — the organ of the court — said': “The labor of an attorney ought to be rewarded according to its nature, extent, and the degree of skill and care it demands. The care is certdinly *132 increased by the value of the estate, etc.” We consider — as did our predecessors — that, in matters concerning successions--where there is no hope of recovery beyond what the deceased has left, when the question is less what is due than what can be paid, the attorney’s fee should be measured to the proportions of the estate.
The succession of Linton appears to be more than twenty times insolvent, and — we are bound to presume- — was completely insolvent from the day on which it was opened. It is and ever was the property of its-creditors. This being conceded, to do what he has done, to secure for them a sum of $5500, what is it reasonable to believe that those creditors would have been disposed to offer and allow to Mr. Bowman ?
The plantation and the rent due for the same composed the whole-succession of Linton, and that plantation had passed from its possession. To recover that property, a suit had become necessary, and that, suit was conducted by Mr. Bowman in the district and Supreme Court-Without his efforts and his services, the succession would have been-composed of exclusively debts and charges.
Under these circumstances — when, so far as we are informed, the whole of the troubles and labors of that litigation devolved on the attorney, is it probable that he would have been offered or would have accepted less than one third of whatever he would secure for the succession? His efforts were successful, and we consider that — for all the-services which he has rendered to said estate, up to the time when this-appeal was submitted to this court, he is entitled to one third of the assets which were realized by his industry — that is one third of $5500.
This view dispenses us from discussing whether the succession is. or is not liable for the other claims of said attorney, as, under any circumstances, it would be inequitable to allow him less than we propose to do, for those services which — it is admitted — have been rendered to and are chargeable to the estate.
The cause which induces us to reduce Mr Bowman’s fees, justifies-the reduction of that of Messrs. Race, Foster & Merrick, from $300 to $250. As to Mr. Hunter’s claim, it was already partly disallowed, and we leave it as fixed by the parish court.
The succession of Linton was opened in 1867, and it was in July 1873 that Wells took charge of the same. It had then been partially administered by Hawley; the inventories were made, suit had been, brought, and it is evident that — at that date — at least one half. of what. was to be done to settle the succession of Linton had been accomplished,, and it matters not whether Hawley did or did not receive any commission : .his successor’s administration was a fractional one, and he can justly claim but a commission proportionate to his services, and that is — at most — two and a half per cent on the inventory of 1875, or $456- *133 The Code so expressly provides and. this court has thus invariably held. R. O. 0. 1069 — 1201—5 N. S. 229. 1 R. R. 400, 3 A. 624 — 4th A. 386. .
As to the rent of six hundred dollars, no mention of it is made in either of the inventories, and presuming — as we do — that it was collected by Wells, we are of the opinion that he is entitled to a commission of five per cent thereon.
Were it not that the succession of Linton is absolutely insolvent— that it appears to have been renounced by his heirs, and that the parties to this controversy have placed before us an admission that, since July 1873, it has been administered upon by Wells, in his capacity as public administrator of the parish of Rapides — we would have, under his own pleadings and according to the views expressed in the matter of the succession of Frangois Bougére, lately decided by ourselves, reduced his commission to one half of that of a dative executor ; but we are precluded from doing so, by the aforesaid admission and the uncontradicted presumption that the estate of Linton is vacant.
The opposition to item No. 29 of the account cannot be sustained. That item, though in blank, provides for exclusively the costs of filing and homologating the account. The amount of those costs is fixed by law, and, as that amount was not and could not have been positively and oorreetly ascertained when the tableau of intended distribution was deposited in court, the creditors’ right can — in no way — be affected by the mere mention that — whatever they may be — they will have to be deducted from and paid out of the funds to be distributed.
It is, therefore, ordered, adjudged and decreed that the judgment ■of the lower court is amended, and that in lieu of the several amounts to them allowed in the provisional account filed by J. M. Wells, Junior, as executor of Stephen Duncan Linton, R. J. Bowman is hereby allowed eighteen hundred thirty-three dollars and thirty-three and one third cants — Race, Foster & Merrick two hundred and fifty dollars — and said Wells four hundred and eighty dollars.
It is further ordered, adjudged and decreed that — as amended — the judgment of the lower court is affirmed : the costs of the appeal to be paid in solido by the said J. M. Wells, Junior — R. J. Bowman, Race, Foster & Merrick and William Grant.
The Chief Justice recused himself in this cause, having been of counsel.